| Judith Berkan y otros<br><br>Peticionarios<br><br>v.<br><br>Mead Johnson Nutrition Puerto Rico, Inc.<br><br>Recurrida | Certiorari<br><br>2020 TSPR 29<br><br>204 DPR ____ |
|---|---|

Número del Caso:  AC-2018-62


Fecha:  12 de marzo de 2020


Tribunal de Apelaciones:

    Región Judicial de San Juan- Caguas, Panel I


Abogadas de la parte peticionaria:

    Lcda. Judith Berkan
    Lcda. Mary Jo Méndez


Abogadas de la parte recurrida:

    Lcda. Magda Mariela Rexach-Rexach
    Lcda. Rosalie Irizarry Silvestrini


Materia: Derecho Laboral – Aplicación de la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, (Ley Núm. 402), 32 LPRA sec. 3114 et seq., a reclamaciones extrajudiciales laborales.  Se decreta la nulidad de las cláusulas contenidas en acuerdos de transacciones extrajudiciales laborales mediante las cuales un empleado renuncia al pago de los honorarios de abogado por ser una práctica contraria a la política pública que persigue la Ley Núm. 402.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Judith Berkan y otros<br><br>    Peticionarios<br><br>          v.<br><br>Mead Johnson Nutrition Puerto Rico, Inc.<br><br>    Recurrida | AC-2018-62 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 12 de marzo de 2020.

En este recurso se cuestiona la aplicación de la Ley Núm. 402 de 12 de mayo de 1950 (Ley Núm. 402), según enmendada, 32 LPRA sec. 3114 *et al.*, a un acuerdo de separación y relevo general extrajudicial entre un empleado y su antiguo patrono, en ocasión de ser cesanteado.[1] Adelantamos que luego de examinar detenidamente los sucesos pertinentes, a la luz del derecho aplicable, resolvemos que la Ley Núm. 402 es aplicable a **reclamaciones extrajudiciales**. Como resultado de lo anterior, declaramos que en este tipo de acuerdo será nula toda cláusula mediante la cual el empleado cesanteado otorgue un relevo a favor

---

[1] La Ley Núm. 402 de 12 de mayo de 1950 (Ley Núm. 402), según enmendada, 32 LPRA sec. 3114 *et al.*, específicamente implementa una política pública que prohíbe a los abogados el cobro de honorarios en reclamaciones laborales en contra de los empleados. Asimismo, establece que cuando el obrero prevalezca en este tipo de casos, le corresponde al patrono pagar los honorarios de abogado. Véase Art. 2 de la Ley Núm. 402, 32 LPRA sec. 3115.

del patrono sobre el pago de los honorarios de abogado, por ser esta práctica contraria a la política pública de la referida ley.  Además, aclaramos cuál es el remedio que tienen los abogados ante una disputa sobre honorarios al amparo de esta disposición estatutaria.

## I.

El Sr. Luis Ortiz Albino (señor Ortiz) estuvo empleado por Mead Johnson Nutrition Puerto Rico, Inc. (Mead o patrono) desde el 29 de enero de 1979 hasta el 10 de diciembre de 2012, fecha en que fue separado de su empleo por motivo de una reorganización mediante la cual se eliminó su plaza de la compañía.  **Ese mismo día**, el patrono le entregó un *Borrador del acuerdo de separación y relevo general* (*Borrador del acuerdo*)[2] mediante el cual se le informó que era elegible para recibir un paquete de beneficios condicionado a que suscribiera el *Borrador del acuerdo*.  Entre otras cosas, el *Borrador del acuerdo* otorgaba una compensación por separación de empleo, a cambio de su renuncia a posibles reclamaciones al amparo de leyes laborales estatales y federales en contra del patrono.

El 12 de diciembre de 2012, antes de firmar el *Borrador del acuerdo*, el señor Ortiz pactó un contrato de servicios

---

[2]  Para evitar confusión denominaremos el documento entregado inicialmente por Mead Johnson Nutrition Puerto Rico, Inc. (Mead o patrono) como *Borrador del acuerdo de separación y relevo general* (*Borrador del acuerdo*) para distinguirlo de la versión final del *Acuerdo de separación y relevo general* (*Acuerdo final*).

profesionales con las Lcdas. Judith Berkan y Mary Jo Méndez (peticionarias o abogadas) quienes formaban parte del Bufete Berkan Méndez Law Offices. Así pues, las peticionarias representaron al señor Ortiz frente al patrono durante las negociaciones concernientes al referido *Borrador del acuerdo* **desde diciembre de 2012 hasta marzo de 2013.** Como resultado de su intervención se realizaron varias modificaciones al *Borrador del acuerdo.*

En lo pertinente a este recurso, la versión final del *Acuerdo de separación y relevo general (Acuerdo final)* estableció que:

ACUERDO DE SEPARACIÓN Y RELEVO GENERAL

Definiciones. […]. Los términos específicos que usen en este Acuerdo tienen los siguientes significados:

. . . . . . . .

F. Mis Reclamaciones quiere decir, excepto según específicamente excluidos en el último párrafo de esta sección luego del párrafo F.10 abajo, todos los derechos que tengo en estos momentos a cualquier tipo de remedio contra la Compañía, incluyendo, sin limitación alguna:

. . . . . . . .

**9. todas mis reclamaciones por honorarios de abogado[], costas e intereses.**

. . . . . . . .

**<u>Acuerdo de Relevo sobre Mis Reclamaciones</u>.** Voy a recibir un Beneficio de Separación de [Mead], si firmo el presente Acuerdo y, si tengo 40 años de edad o más para la fecha que firme este Acuerdo, no revoco, este Acuerdo, según provisto más adelante. Entiendo y reconozco que no tendré derecho a recibir el Beneficio de Separación si no firmo este Acuerdo, o si tengo 40 años de edad o más para la fecha que firme este Acuerdo, y revoco a tiempo el mismo. A cambio del Beneficio por Separación y cualquier otra consideración descrita en este Acuerdo, **renuncio a todas Mis**

**Reclamaciones hasta el límite máximo permitido por ley, y acepto cumplir con este Acuerdo en todas sus partes. No demandaré a la Compañía ni presentaré reclamación contra la Compañía por compensación o indemnización relacionada a Mis Reclamaciones. El Beneficio de Separación que estoy recibiendo es justa consideración por mis promesas en este Acuerdo y tiene la intención exclusiva de obtener un relevo completo.**

.    .    .    .    .    .    .    .    .

**Derecho a Consultar con un Abogado.** Entiendo y reconozco que según establecido por ley, por este medio he sido aconsejado por la Compañía a consultar con un abogado, antes de firmar este Acuerdo.

.    .    .    .    .    .    .    .

**Interpretación de este Acuerdo.** Este Acuerdo debe ser interpretado lo más ampliamente posible para lograr mi intención de resolver todas **Mis Reclamaciones** en contra de la Compañía, y de lo contrario cumplir con mis obligaciones bajo este Acuerdo. **Si un tribunal determina que este Acuerdo es inadecuado para renunciar a una reclamación en particular, comprendida dentro de Mis Reclamaciones, este Acuerdo permanecerá en efecto y será ejecutable con respecto a todo el resto de Mis Reclamaciones.**

**Separabilidad.** Acuerdo que, de un tribunal con jurisdicción determinar que alguna cláusula de este Acuerdo no es válida, las restantes cláusulas continuarán en pleno efecto y vigor […]. Estoy relevando voluntariamente Mis Reclamaciones en contra de la Compañía y aceptando mis otras obligaciones bajo este Acuerdo. Mi intención es que este Acuerdo sea legalmente vinculante. (Énfasis nuestro).**3**

La disposición relacionada con el relevo del pago de honorarios de abogado provocó una controversia entre las partes durante las negociaciones, por lo que el patrono reiteró su denegatoria al pago de honorarios. No obstante, el **7 de marzo de 2013,** el señor Ortiz firmó el *Acuerdo final.*

---

**3**    *Acuerdo de separación y relevo general*, Apéndice de la *Oposición a expedición de petición de certiorari*, págs. 2-9.

Por su parte, el **11 de marzo de 2013**, las peticionarias renunciaron expresamente al pago de honorarios de abogado a través de una carta enviada a la representación legal de Mead y expresaron que lo hacían para evitar incurrir en violaciones éticas frente a su cliente.

### A. Demanda

Así las cosas, el 6 de febrero de 2014, las peticionarias presentaron una demanda sobre cobro de honorarios de abogado en contra de Mead al amparo de la Ley Núm. 402. Sostuvieron que, tras lograr el *Acuerdo final* que satisfizo la reclamación extrajudicial del señor Ortiz, solicitaron el pago de honorarios al patrono. Sin embargo, éste rehusó hacer pago alguno y les indicó que debían cobrar sus honorarios de la partida que se acordó pagarle al señor Ortiz en el *Acuerdo final*. Las abogadas adujeron que, debido a la prohibición de la Ley Núm. 402 sobre los pactos de honorarios entre abogado y empleado o trabajador en los casos de reclamaciones laborales en contra de patronos, Mead provocó un potencial conflicto de interés entre ellas y su cliente, pues se vieron en la obligación de renunciar a sus honorarios ante la necesidad del cliente de recibir el dinero acordado. Véase Art. 1 de la Ley Núm. 402, *infra*. En específico, las peticionarias puntualizaron que su claudicación fue resultado de la coacción de Mead. Señalaron además, que su renuncia a los honorarios carecía de validez y no surtió efecto alguno por contravenir la política pública de Puerto Rico en protección de los

obreros. A esos efectos, indicaron que "la práctica de exigir renuncias del pago de honorarios en los casos laborales a cambio de la transacción de la reclamación de los empleados es contraria a la política pública". Conforme a lo anterior, las abogadas solicitaron al Tribunal de Primera Instancia que declarara su renuncia nula y ordenara a Mead a pagar una suma razonable por concepto de honorarios de abogado.

El 10 de marzo de 2014, Mead presentó una *Moción de desestimación* bajo la Regla 10.2 (5) y (6) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 10.2, mediante la cual arguyó que la demanda no estableció que Mead estuviese obligada a pagar los honorarios de abogado por lo que las peticionarias no tenían derecho a remedio alguno.

En cuanto a la Ley Núm. 402, el patrono planteó que la representación legal se limitó a llevar a cabo una negociación extrajudicial sobre el *Acuerdo final* por lo que no se configuró una reclamación laboral que diera paso a la aplicación de las disposiciones de la Ley Núm. 402. A esos efectos, argumentó que los Artículos 1, 2 y 3 de la Ley Núm. 402, *infra*, se circunscriben a la presentación de una **reclamación judicial** al amparo de la legislación laboral, lo cual nunca se concretizó en este caso.

En cuanto al Artículo 2 de la Ley Núm. 402, *infra*, sostuvo que la **transacción extrajudicial** que menciona el estatuto está condicionada a la presentación previa de una **reclamación judicial** y que ese no fue el caso del señor

Ortiz. Con relación al Artículo 4, adujo que tampoco es aplicable puesto que se limita a reconocerle una causa de acción al obrero por cobro de dinero y daños en contra de un abogado que le haya cobrado honorarios en violación de esta disposición. Sostuvo, además, que el estatuto permite a las partes que no hayan llegado a un acuerdo de transacción de una reclamación judicial someter el asunto de los honorarios de abogado a la adjudicación del tribunal, pero no le reconoce una causa de acción al abogado del obrero o empleado en contra del patrono por no ser éste parte en el pleito. Asimismo, explicó que, aún asumiendo que el consentimiento de las peticionarias fuese necesario para obtener la renuncia de honorarios de abogado, éstas no presentaron datos suficientes para establecer los elementos de intimidación y nulidad del contrato (*Acuerdo final*). Alegó que una situación difícil no vicia el consentimiento. A base de todo lo anterior, aseguró que, tomando como ciertas las alegaciones, no surgía una causa de acción ni conjunto de hechos que justificaran la concesión de un remedio en contra de Mead. En la alternativa, Mead solicitó la desestimación alegando que el señor Ortiz era parte indispensable en el pleito al firmar el *Acuerdo final* donde renunció a los honorarios que se cuestionan en este caso. Planteó que los honorarios pertenecen a la parte y no al abogado según el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 24. Sostuvo que del tribunal entender que las peticionarias tenían una causa de acción en su contra,

cualquier sentencia a favor de éstas implicaría un incumplimiento del *Acuerdo final* por parte del señor Ortiz.

En su oposición, las peticionarias indicaron que la política pública de la Ley Núm. 402 se extiende a **reclamaciones extrajudiciales**. Alegaron que las **negociaciones** que realizaron en representación del señor Ortiz dieron base a una **reclamación** que culminó con una **transacción extrajudicial**. Sobre este particular, resaltaron que, en el *Acuerdo final*, el señor Ortiz renunció expresamente a varias causas de acción de naturaleza laboral. Conforme a ello, tenían legitimación activa para demandar por el cobro de honorarios de acuerdo con el Artículo 2 de la Ley Núm. 402, *infra*, puesto que el señor Ortiz culminó su interés como parte en el asunto desde que pactó el *Acuerdo final*. Además, plantearon que el señor Ortiz no era parte indispensable ya que la Ley Núm. 402 le impedía recibir el pago de honorarios de abogado.

Así las cosas, el 1 de junio de 2015, el Tribunal de Primera Instancia denegó la moción de desestimación de Mead y ordenó la continuación de los procedimientos.[4] Concluyó que las controversias de derecho planteadas eran de carácter novel, por lo que requerían un estudio más detallado a la luz de la prueba que, en su día, presentaran las partes. Además, indicó que en ese momento no se podía establecer con

---

[4] *Resolución*, Apéndice de la *Oposición a expedición de petición de certiorari*, págs. 48-54.

certeza que las peticionarias carecieran de derecho a remedio alguno.[5]

En desacuerdo con la determinación del Tribunal de Primera Instancia, Mead recurrió al foro apelativo intermedio mediante un recurso de *certiorari*.

## B. KLCE201500908

En julio de 2015, el Tribunal de Apelaciones emitió una *Resolución* mediante la cual denegó la expedición del recurso presentado por Mead al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, por entender que el carácter novel y la complejidad de la controversia requería que las partes presentaran prueba para ampliar los fundamentos planteados. De este modo coincidió con el foro primario.[6]

## C. Reconvención

El 2 de julio de 2015, el patrono presentó su contestación a la demanda así como una reconvención en contra de las peticionarias. Admitió que, aunque éstas representaron al señor Ortiz durante los intercambios con Mead, sus comunicaciones no constituyeron una reclamación cubierta por la Ley Núm. 402. Arguyó, además, que las peticionarias incurrieron en incumplimiento de contrato, dolo e interferencia torticera con las relaciones contractuales, ya que indujeron al señor Ortiz a firmar el

---

[5]   íd., págs. 53-54.

[6]   *Resolución* (KLCE201500908), íd., págs. 87-89.

*Acuerdo final* renunciando a los honorarios de abogado, a pesar de que planeaban presentar la demanda en contra de Mead. Así, entre otras cosas, reclamó una indemnización por los daños sufridos como resultado del incumplimiento.

El 13 de julio de 2015, las peticionarias contestaron la reconvención. Entre otros asuntos, adujeron que la carta renunciando a los honorarios de abogado fue producto de coacción. Ello, debido a que la posición asumida por Mead y sus abogados creó un potencial conflicto de interés con su cliente, quien interesaba recibir los beneficios acordados con el patrono de forma expedita.

### D. Demanda contra tercero

Posteriormente, Mead presentó una demanda contra tercero en contra del señor Ortiz, la Sra. Iris Muñoz y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, terceros demandados). Sostuvo que conforme al *Acuerdo final*, el señor Ortiz se obligó a indemnizar a Mead por todas las reclamaciones, costas y gastos, incluyendo honorarios de abogado, incurridos como resultado de cualquier representación falsa en el *Acuerdo final*. Además, adujo que igualmente se establecía en el *Acuerdo final* que, en caso de iniciar, promover o mantener una demanda en contra de Mead fundamentada en las reclamaciones que renunció en el *Acuerdo*, el señor Ortiz sería responsable de pagar a Mead todas las costas y honorarios de abogado razonables en los que incurriera Mead para defenderse en el pleito. Conforme a lo anterior, planteó que el señor Ortiz conocía que la

renuncia a los honorarios de abogado era una condición esencial para el patrono acceder al *Acuerdo final*, por lo que reclamó la devolución del dinero pagado por entender que resultó nulo por dolo.

Por su parte, los terceros demandados presentaron una moción de desestimación de la demanda en su contra. En resumen, sostuvieron que, conforme a la interpretación de las cláusulas del *Acuerdo final* invocadas por Mead, la Ley Núm. 402 y el Código Civil de Puerto Rico, carecían de potestad para renunciar a los honorarios de las peticionarias por lo que la renuncia no tuvo efecto legal sobre el derecho de las abogadas. Adujeron que las alegaciones de Mead eran insuficientes para establecer una reclamación por dolo. Finalmente, solicitaron la desestimación de la demanda y la imposición de sanciones por temeridad.

Tras evaluar los planteamientos de las partes, el Tribunal de Primera Instancia emitió una *Sentencia parcial* de conformidad con la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3, mediante la cual desestimó la demanda contra tercero presentada por Mead. En lo pertinente, el foro primario determinó que Mead no logró demostrar que el señor Ortiz incurrió en incumplimiento de contrato ni dolo. Además, al interpretar la Ley Núm. 402 en el proceso de analizar el derecho como parte de los fundamentos de su dictamen, razonó que:

De un examen de la Ley Núm. 402 […] en su totalidad, se desprende que la prohibición en cuanto a los honorarios cobrados al empleado, así como la obligación de los patronos de pagar los mismos, **aplica a toda clase de "reclamación"**. El artículo 1 de la Ley Núm. 402 […], **no se limita a los casos presentados ante los tribunales**. El mismo, se refiere, en términos generales, a las situaciones en que los empleados "se ven en la necesidad de reclamar contra sus patronos", sin distinción de reclamaciones extrajudiciales y judiciales […]. (Énfasis suplido).[7]

Conforme a lo anterior, concluyó que el *Acuerdo final* no representó una prohibición a demandas instadas por otras personas. Específicamente, en cuanto a la cláusula de relevo de honorarios que pactó el empleado, entendió que no aplicaba a la reclamación de las peticionarias, ya que el señor Ortiz "no renunció a los honorarios en este caso al amparo de la Ley Núm. 402".[8]

Por otro lado, citó varias cláusulas del *Acuerdo final* y concluyó que el señor Ortiz no violó el contrato. Añadió que el patrono no logró establecer hechos suficientes para obtener un remedio por dolo. Reiteró que, conforme a la *Resolución* de junio de 2015, se trataba de una cuestión novel de derecho y se negó a imponer honorarios de abogado por temeridad. Como resultado, ordenó la continuación de los procedimientos en lo concerniente a las reclamaciones que continuaban pendientes.

---

[7] *Sentencia parcial*, Apéndice de *Apelación y/o Petición de certiorari*, págs. 84-85.

[8] Íd.

**E. KLAN201600822**

Inconforme con esta determinación, Mead recurrió mediante un recurso de apelación ante el Tribunal de Apelaciones. En lo pertinente, impugnó la determinación del foro primario relacionada con la Ley Núm. 402 por no pasar juicio sobre la complejidad y el carácter novel de la controversia. Además, Mead cuestionó la desestimación de la demanda contra tercero por entender que subsistían controversias sobre hechos materiales.

El Tribunal de Apelaciones emitió una *Sentencia* en la que confirmó la *Sentencia parcial* del foro primario en cuanto a la desestimación de la demanda contra tercero. Sin embargo, modificó el alcance de la Ley Núm. 402 al limitarla exclusivamente a reclamaciones judiciales. De esa manera, razonó lo siguiente:

> **Es un hecho no controvertido que, en el presente caso, no hubo una reclamación laboral ante los tribunales, al amparo de la Ley 402,** *supra*. **Según previamente discutido, la Ley 402,** *supra*, **aplica cuando un empleado ha presentado una reclamación laboral ante los tribunales de Puerto Rico.** Aquí, el mismo día en que Mead Johnson le informó al señor Ortiz de su separación de empleo, también le notificó que era elegible para recibir un paquete de beneficios, condicionado a la firma del Acuerdo. **Nunca existió una reclamación laboral ante el [Tribunal de Primera Instancia] del señor Ortiz contra Mead Johnson**.
>
> Antes de firmar el Acuerdo, el señor Ortiz contrató a las Lcdas. Berkan y Méndez para que lo asesoraran respecto al Acuerdo, y no porque hubiese una reclamación laboral judicial bajo la Ley 402. El Acuerdo no se firmó mientras hubo conflicto con respecto al pago de honorarios de abogado. Tan pronto las Lcdas. Berkan y Méndez renunciaron expresamente a cualquier reclamación por concepto de honorarios de abogado, lográndose

> el acuerdo, Mead Johnson emitió el cheque […],
> entre otros beneficios.
>
> .   .   .   .   .   .   .   .
>
> Mead Johnson actuó claro y transparente al
> efectuar el pago de los beneficios a favor del
> señor Ortiz, luego de recibir, por escrito, la
> renuncia de las Lcdas. Berkan y Méndez a reclamar
> honorarios de abogado. **La prohibición que
> establece sobre ese particular la Ley 402,** *supra*,
> **no aplica a este caso. Aquí** <u>**no hubo una
> reclamación laboral**</u> **ante los tribunales de Puerto
> Rico; si un contrato de transacción entre partes
> privadas. Decretamos, pues, que el [Tribunal de
> Primera Instancia] erró al aplicar la Ley 402,**
> *supra*. **(Énfasis suplido).**[9]

Así las cosas, Mead nuevamente presentó una moción de desestimación de la demanda interpuesta por las abogadas en su contra. Sostuvo que la reclamación estaba fundamentada en la Ley Núm. 402 la cual, conforme a lo resuelto en la *Sentencia* del foro apelativo intermedio (KLAN201600822), no era de aplicación al presente caso.

Las peticionarias ripostaron que Mead solicitaba la desestimación a base de un *dictum* del Tribunal de Apelaciones en un caso sobre la viabilidad de la demanda contra tercero presentada por Mead en contra del señor Ortiz. Arguyeron además, que no fueron parte ni participaron del referido trámite ante el foro revisor intermedio.

---

[9] El 14 de agosto de 2017 se remitió el mandato al Tribunal de Primera Instancia, el cual se notificó a todas las partes en el caso. Posteriormente, la *Sentencia* del foro apelativo intermedio (KLAN201600822) advino final y firme. *Sentencia* (KLAN201600822), Apéndice de la *Oposición a expedición de petición de certiorari*, págs. 144-147.

Posteriormente, el Tribunal de Primera Instancia celebró una vista en la que las partes tuvieron la oportunidad de exponer sus argumentos con relación a la moción de desestimación. Así, tras escucharlas, el 2 de febrero de 2018, el foro primario emitió una *Minuta resolución enmendada* en la que denegó la moción de desestimación y concluyó que la *Sentencia* en el KLAN201600822 "atendió una controversia que no guarda relación con la demanda presentada en este caso, la cual no fue objeto de apelación".[10]

## F. KLCE201800271

En desacuerdo, el 23 de febrero de 2018, Mead presentó un segundo recurso de *certiorari* ante el Tribunal de Apelaciones en el que señaló que el foro primario erró al no desestimar la demanda de las peticionarias e incumplió con el mandato del foro apelativo intermedio en la *Sentencia* emitida en el caso anterior (KLAN201600822).

El 12 de abril de 2018, el Tribunal de Apelaciones revocó el dictamen del foro primario.[11] Determinó que, conforme a la dotrina de la ley del caso, la Ley Núm. 402 era inaplicable a las reclamaciones aducidas por las peticionarias por lo que desestimó la demanda, habida cuenta

---

[10] *Minuta resolución enmendada*, Apéndice de *Apelación y/o Petición de certiorari*, pág. 196.

[11] *Apelación*, Apéndice de *Apelación y/o Petición de certiorari*, pág. 2.

de que la *Sentencia* (KLAN201600822) había advenido final y firme.

Puntualizó, en relación con la Ley Núm. 402, lo siguiente:

> [E]n el caso KLAN2016000822, la aplicabilidad de la [Ley Núm. 402] fue un señalamiento de error debidamente formulado […] y como tal fue resuelto en su momento. Las determinaciones sobre la [Ley Núm. 402] que se realizaron en el mencionado caso no fueron *obiter dictum* y la adjudicación efectuada se convirtió en la ley del caso que, como tal, debió ser respetada por el Tribunal.[12]

El 14 de mayo de 2018, las peticionarias acudieron ante este Tribunal mediante un recurso de apelación y plantearon los siguientes señalamientos de error:

> 1. Erró el [Tribunal de Apelaciones] al [e]mitir una Sentencia [d]esestimando la [d]emanda de [las peticionarias], sin previamente haber emitido el [auto de *certiorari*], sin [c]onsiderar los [c]riterios aplicable[s] a [l]a [e]xpedición del [a]uto, sin darles una [o]portunidad a la parte adversamente afectada por la decisión de [p]resentar un Alegato al Tribunal, y sin considerar todos los [a]rgumentos presentados por éstas en el [Tribunal de Primera Instancia], todo en violación del Reglamento del Tribunal y de las [g]arantías mínimas del [d]ebido [p]roceso [d]e [l]ey[.]
>
> 2. Erró [e]l Tribunal al desestimar la [d]emanda, sin [dar] a las [peticionarias] la oportunidad de desarrollar su prueba y sus argumentos en el [Tribunal de Primera Instancia], contrario al dictamen del Panel que atendió el primer [r]ecurso en [a]lzada presentado por Mead, así negándoles el debido proceso y su día en corte.
>
> 3. Erró el [Tribunal de Apelaciones] al aplicar mecánicamente la [doctrina de la ley del caso] a una [p]arte que no había [p]articipado en el [r]ecurso [a]nterior, obviando el propósito de

---

[12] *Sentencia*, Apéndice de *Apelación y/o Petición de certiorari*, pág. 11.

[l]a [d]octrina "… al Servicio de la Justicia, no la Injusticia", *Noriega Rodríguez v. Hernández Colón, 130 DPR 919 (1992), citaciones internas omitidas,* causando un [r]esultado manifiestamente [i]njusto.

4. Erró el [Tribunal de Apelaciones] al [a]plicar la [doctrina de la ley del caso] al tomar como ciertos los hechos expuestos por el Panel II, aún cuando dichos hechos fueron basados en las alegaciones del [tercero demandante] Mead.

5. Erró el [Tribunal de Apelaciones] al ignorar por completo el [t]exto de la Ley Núm. 402.

6. Erró el [Tribunal de Apelaciones] al determinar que las [peticionarias] podían solicitar [r]econsideración o [r]ecurrir en [a]lzada de la Sentencia de [o]tro [p]anel en un [c]aso en que éstas no eran [p]artes.

Expedido el recurso luego de acogerlo como una petición de *certiorari*, y contando con el beneficio de los alegatos de las partes, procedemos a atender las controversias ante nuestra consideración.

## II.

Como cuestión de umbral, debemos determinar si la utilización de la doctrina de la ley del caso por parte del Tribunal de Apelaciones fue apropiada para disponer de la presente controversia.

### A.   Doctrina de la ley del caso

En nuestro ordenamiento jurídico, es norma reiterada que los derechos y obligaciones que han sido objeto de adjudicación en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. Mgmt. Adm. Servs. Corp. v. ELA, 152 DPR 599, 606 (2000). La doctrina de la ley del caso tiene como propósito que los tribunales nos resistamos a reexaminar asuntos ya considerados dentro de un mismo caso

para velar por el trámite ordenado y expedito de los litigios, así como promover la estabilidad y certeza del derecho. Íd., pág. 608; Núñez Borges v. Pauneto Rivera, 130 DPR 749, 755 (1992); Torres Cruz v. Municipio de San Juan, 103 DPR 217, 222 (1975).

La doctrina de la ley del caso aplica a las controversias adjudicadas, ya sea por tribunales de instancia, como tribunales apelativos. Cacho Pérez v. Hatton Gotay y otros, 195 DPR 1, 9 (2016). Un dictamen judicial adquiere el carácter de ley del caso al constituir una decisión final en los méritos de la cuestión considerada y decidida. Cacho Pérez v. Hatton Gotay y otros, supra (citando a Félix v. Las Haciendas, 165 DPR 832, 843 (2005)).

De manera que, las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones consideradas y decididas, por lo que, generalmente dichas determinaciones obligan, tanto al tribunal de instancia como al foro que las dictó, si el caso vuelve a su consideración. Don Quixote Hotel v. Tribunal Superior, 100 DPR 19, 29-30 (1971) (citando a Srio. del Trabajo v. Tribunal Superior, 95 DPR 136, 140 (1967)).

No obstante, en situaciones excepcionales, si el caso regresa para la evaluación y consideración del tribunal mediante los mecanismos apropiados, y éste entiende que sus **determinaciones previas son erróneas y pueden causar una grave injusticia**, dicho foro puede aplicar una norma de derecho distinta y resolver así de forma justa. Cacho Pérez

v. Hatton Gotay y otros, *supra*, pág. 9. Véanse, además: Pueblo v. Serrano Chang, 201 DPR 643, 653 (2019); Félix v. Las Haciendas, *supra*, pág. 844; Don Quixote Hotel v. Tribunal Superior, *supra*, pág. 30.

En atención a lo anterior, "hemos colegido que sólo cuando se presenta un atentado contra los principios básicos de la justicia, es que los tribunales pueden descartar la aplicabilidad de la doctrina de la 'ley del caso'". Cacho Pérez v. Hatton Gotay y otros, *supra*, pág. 10. "Se trata de una doctrina al servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados 'manifiestamente injustos'". Noriega v. Gobernador, 130 DPR 919, 931 (1992).

**III.**

La *Sentencia* (KLAN201600822) concluyó que la Ley Núm. 402 es inaplicable a los hechos del caso, porque las peticionarias no presentaron una reclamación laboral en los tribunales de Puerto Rico en representación del señor Ortiz. De este modo, el Tribunal de Apelaciones razonó que, una vez advino final y firme la *Sentencia* (KLAN201600822), el Tribunal de Primera Instancia erró al no actuar de acuerdo con el estado de derecho vigente. Consiguientemente, revocó la determinación del foro primario y ordenó la desestimación de la demanda.

Por su parte, las peticionarias arguyen que el uso de esta norma fue injustificado, pues el foro apelativo intermedio ignoró la totalidad del contenido de la Ley Núm.

402, la cual aplica, en efecto, a reclamaciones extrajudiciales como la entablada por ellas en representación del señor Ortiz en contra de Mead.

De entrada, según mencionamos anteriormente, es norma conocida que, como excepción a la aplicación de la doctrina de la ley del caso, un tribunal que entiende que sus determinaciones previas son erróneas y causan una grave injusticia, deberá aplicar una norma de derecho distinta a la anterior. Cacho Pérez v. Hatton Gotay y otros, *supra*, pág. 9. Véanse, además: Pueblo v. Serrano Chang, *supra*; Félix v. Las Haciendas, *supra*; Don Quixote Hotel v. Tribunal Superior, *supra*.

Según discutiremos en detalle más adelante, una evaluación integral y minuciosa del Historial Legislativo y las disposiciones de la Ley Núm. 402, **no** permiten concluir, como hiciera el Tribunal de Apelaciones, que dicho estatuto únicamente opera en función de reclamaciones judiciales. Esa interpretación incorrecta en derecho no debe ser sostenida bajo el mandato de la doctrina de la ley del caso, puesto que, consentir a ello, tendría el efecto de incurrir en una grave injusticia al limitar y hasta impedir la revisión de una controversia de carácter novel como la presente. Además, evitaría que la misma sea evaluada con la cautela y prudencia que amerita, y, a su vez, provocaría serias implicaciones en nuestro derecho laboral y la política pública que rodea al referido estatuto.

**IV.**

Aclarado lo anterior, procedemos a explicar los fundamentos que nos llevan a concluir que la Ley Núm. 402 es aplicable a reclamaciones extrajudiciales laborales por ser ésta la interpretación más adecuada de dicho estatuto. Veamos.

**A. Reclamación extrajudicial**

En el pasado, definimos el concepto de reclamación como la acción de exigir o intimar un derecho. A esos efectos, determinamos que:

> **Nuestro Código civil no ha dado a la palabra 'reclamación' ningún significado preciso, ni técnico. Pero ello no nos exime de tratar de encontrarlo. Reclamación vale, en principio, tanto como <u>exigencia o intimación</u>. Es decir: se trata de un acto por el cual el titular de un derecho subjetivo o de una facultad se dirige al sujeto pasivo de dicho derecho o de dicha facultad requiriéndole para que adopte el comportamiento debido. La reclamación es pues una <u>pretensión</u> en sentido técnico.** (Negritas y subrayado suplido). <u>Díaz de Diana v. A.J.A.S. Ins. Co.</u>, 110 DPR 471, 476 (1980) (citando a L. Díez-Picazo, *La prescripción en el Código Civil*, 1ra ed., Barcelona, Ed. Bosch, 1964)).

En este contexto, el concepto de **pretensión** constituye una "solicitación para conseguir algo que se desea". Real Academia Española, *Diccionario de la lengua española*, 23era ed., Madrid, Ed. Espasa Calpe, 2001, T. II, pág. 1782. Desde un aspecto práctico o técnico de una reclamación, **la pretensión** es un "[d]erecho bien o mal fundado que uno juzga tener sobre una cosa". I. Rivera García, *Diccionario de términos jurídicos*, 3ra ed., San Juan, Lexis Publishing, 2000, pág. 208.

También, identificamos la **reclamación** en el momento en que surge alguna **actividad o el diálogo sobre un derecho** durante la relación jurídica que provoca un acontecimiento que rompe el silencio previo. SLG García – Villega v. ELA et al., 190 DPR 799, 814 (2014) (citando a Díez-Picazo, op. cit., págs. 39-40). De esa manera, se anuncia "que el derecho sigue vivo, que va a ser ejercitado o simplemente **que puede serlo**, [por lo que] la pretensión del titular del derecho no será nunca intempestiva ni, por ello, inadmisible". (Énfasis suplido). Díez-Picazo, op. cit., pág. 94. Asimismo, la reclamación se considera como "la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo". Miramar Marine et al. v. Citi Walk et al., 198 DPR 684, 720 esc. 23 (2017); Díaz Santiago v. International Textiles, 195 DPR 862, 870 (2016); SLG García – Villega v. ELA et al., supra, pág. 822; Sánchez v. Aut. de los Puertos, 153 DPR 559, 568 (2001); Galib Frangie v. El Vocero de P.R., 138 DPR 560, 569 (1995); De Jesús v. Chardón, 116 DPR 238, 246-247 (1985) (citando a Feliciano v. AAA, 93 DPR 655, 660 (1966)).

Cónsono con lo anterior, en materia de derecho laboral, **"reclamar"** se define como **"exigir o solicitar algún beneficio, protección o concesión, por entender que el derecho lo cobija**; dícese además de aquella solicitud que se realiza en conformidad a alguna cláusula o acuerdo entre patrono y el empleado, donde el primero se comprometió con el segundo a honrarlo". (Énfasis nuestro). H.R. Arroyo-

Aguilar, *Léxico laboral puertorriqueño: diccionario de términos jurídicos sobre el derecho del trabajo*, San Juan, Ed. Situm, 2010, pág. 247. Finalmente, cuando la reclamación se presenta fuera del ámbito judicial, posee varios propósitos fundamentales como lo es "fomentar las transacciones extrajudiciales". Sánchez v. Aut. de los Puertos, *supra*; Miramar Marine *et al.* v. Citi Walk *et al.*, *supra*.

## B. Contrato de transacción

El Código Civil establece en su Artículo 1709, 31 LPRA sec. 4821 (1990), que "la transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado". Los elementos esenciales de este tipo de contrato son: (1) una relación jurídica litigiosa, controvertida e incierta; (2) la intención de los contratantes de eliminar las controversias y sustituir, mediante la transacción, esta relación incierta con la seguridad de otra "cierta e incontestable"; y (3) las recíprocas concesiones de las partes puesto que "toda transacción supone que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y optan por resolver dichas diferencias mediante mutuas concesiones", lo que implica una renuncia total o parcial. US Fire Insurance v. AEE, 174 DPR 846, 854 (2008); Mun. de San Juan v. Prof. Research, 171

DPR 219, 239 (2007); G.E. C. & L. v. So. T. & O. Dist., 132

DPR 808, 815 (1993); Citibank v. Dependable Ins. Co. Inc.,

121 DPR 503, 512 (1988). Véanse, también: L. R. Rivera

Rivera, *El contrato de transacción: sus efectos en*

*situaciones de* solidaridad, 1ra ed., San Juan, Ed. Jurídica

Editores, 1998, pág. 35; Neca Mortg. Corp. v. A & W Dev.

S.E., 137 DPR 860, 870 (1995). Además, el contrato de

transacción posee las características de "un contrato

consensual, bilateral, recíproco y oneroso". S. Tamayo

Haya, *El contrato de* transacción, 1ra ed., Madrid, Ed.

Thomson Civitas, 2003, pág. 54.

En relación con la controversia que debe existir previo

a la transacción, el profesor Rivera Rivera nos explica que:

> [N]o reside en el mero conflicto de intereses
> entre quienes discuten, sino que requiere
> cualificarse jurídicamente en su conflictividad
> por plantear en ella **los contendientes
> pretensiones y oposiciones o, mejor, opuestas
> pretensiones sobre los derechos que les asisten
> en torno a la situación o relación jurídica
> respecto a la que discuten.** Es de notar, sin
> embargo, que la cuestión controvertida que se
> resuelve en la transacción puede recaer no sólo
> sobre aspectos estrictamente jurídicos como el
> significado o alcance de una norma, sino también
> sobre cuestiones de hechos cuando éstas repercuten
> en las consecuencias jurídicas […]. (Énfasis
> nuestro). Rivera Rivera, *op. cit.*, pág. 36.

Como solución, surgen las **concesiones otorgadas en un**

**acuerdo bilateral** que implican "sacrificios recíprocos, es

decir, el abandono de una cosa, derecho o pretensión […]

[cuando] [e]l acreedor consiente recibir una parte de su

pretensión a cambio de abandonar o renunciar a la otra y en

esto su sacrificio". Tamayo Haya, *op. cit.*, pág. 141. **Así,**

"**[l]as partes tras emitir sus opiniones y pretensiones en el marco de un <u>libre debate</u>, llegan a un convenio, a una solución de compromiso intermedia entre los dos extremos contrapuestos inicialmente esgrimidos […]**". (Énfasis suplido). <u>Íd.</u>, pág. 42. Estas opiniones o pretensiones forman parte esencial del contrato de transacción, ya que "constituyen no sólo el medio esencial para el desarrollo de la causa del negocio transaccional, sino que éstas pasan a formar parte de la propia causa". <u>Mun. de San Juan v. Prof. Research</u>, *supra* (citando a <u>López Tristani v. Maldonado</u>, 168 DPR 838, 857 (2006)). Por tanto, la falta de concesiones mutuas, luego de un libre diálogo entre las partes, impide la transacción por falta de causa. Tamayo Haya, *op. cit.*, pág. 144.

Por otro lado, la transacción sólo abarca los objetos expresamente determinados en ella o los que por una inducción necesaria de sus palabras deban considerarse incorporados en el acuerdo. A tono con lo anterior, cuando el contrato contenga una renuncia general de derechos se considerará que se trata sólo de aquellos que tienen relación con la disputa sobre la que ha recaído la transacción. <u>Blás v. Hospital Guadalupe</u>, 167 DPR 439, 449-450 (2006); Art. 1714 del Código Civil de Puerto Rico, 31 LPRA sec. 4826 (1990). Es decir, "no deberán entenderse comprendidos en el contrato de transacción cosas distintas y casos diferentes de aquellos sobre los que las partes se propusieron contratar". Rivera Rivera, *op. cit.*, pág. 61.

Es por lo anterior que se ha afirmado que la interpretación de dichos contratos es de naturaleza restrictiva. Íd. **Por último, la libertad de contratación cede ante cláusulas que sean contrarias a "las leyes, a la moral, [y] al orden público".** (Énfasis suplido). Art. 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3375.

En lo aquí pertinente, la **transacción extrajudicial** es aquella que ocurre "antes de que comience el pleito que se quiere evitar, o cuando una vez comenzado, las partes acuerdan una transacción sin la intervención del tribunal". Rodríguez *et al.* v. Hospital *et al.*, 186 DPR 889, 904 (2012). En otras palabras, ésta tiene el objetivo de **evitar la provocación de un pleito**. Rivera Rivera, *op. cit.*, pág. 88.

En Puerto Rico existe una política pública a favor de que se transijan los pleitos sin tener que ir a los tribunales y llegar a un juicio. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ediciones Situm, 2016, pág. 108. Conforme a lo anterior, en lo concerniente a las comunicaciones realizadas durante las negociaciones, la política pública busca promover "que las partes puedan transigir sus reclamaciones civiles, para lo cual es necesario que hablen entre sí y hagan ofertas, sin temor a que, si no llegan a un acuerdo, se use como evidencia la oferta de transacción o las conversaciones habidas en el curso de las negociaciones". Íd.

No obstante, el profesor Ernesto L. Chiesa explica que:

**[S]i se perfecciona un contrato de transacción, la regla de exclusión no es aplicable y, por supuesto, es admisible el contrato de transacción en un pleito para hacerlo valer; también son admisibles las conversaciones que condujeron a la transacción, si son pertinentes para esclarecer la intención de las partes o el alcance de la transacción.** (Énfasis suplido). Chiesa Aponte, *op. cit.*, págs. 109-110.

### i. *Acuerdo de separación y relevo general*

En ocasiones anteriores hemos evaluado la figura del acuerdo de separación y relevo general extrajudicial que surge vinculado a una cesantía. Mediante este acuerdo, un patrono ofrece al empleado una compensación y unos beneficios a cambio de un relevo sobre las posibles reclamaciones del empleado, al amparo de leyes laborales. Así, lo hemos catalogado como un **contrato de transacción**. Ortiz Chévere v. Srio. Hacienda, 186 DPR 951 (2012).[13]

En Bacardí Corp. v. Torres Arroyo, 2019 TSPR 133, 202 DPR__(2019), como resultado de una reorganización que eliminó su plaza, el Sr. Evaristo Torres Arroyo fue cesanteado. Posteriormente, éste suscribió un acuerdo de

---

[13] En esa ocasión examinamos, desde una perspectiva tributaria, las cuantías otorgadas en **acuerdos o contratos de transacción** que un empleado firma después de ser cesanteado con la **intención de transigir** cualquier reclamación obrero patronal que el empleado pueda presentar en contra de su antiguo patrono al amparo de las leyes laborales locales o federales.

De otra parte, el Tribunal de Apelaciones para el Primer Circuito ha reconocido también que un **acuerdo extrajudicial** suscrito entre patrono y empleado cumple con los elementos de un **contrato de transacción**. A esos efectos, señaló que: la terminación del empleo crea una relación jurídica incierta; el lenguaje del relevo establece claramente la intención de eliminar esa incertidumbre y, finalmente, las partes realizaron concesiones recíprocas. Ruiz-Sánchez v. Goodyear Tire & Rubber Co., 717 F.3d 249 (1er Cir. 2013).

terminación y relevo de reclamaciones con su antiguo patrono mediante el cual, entre otras consideraciones, "aceptó que no tenía reclamaciones contra Bacardí a raíz del empleo o su terminación, y que de tenerlas renunciaba a ellas, y se comprometió a indemnizar a Bacardí por las costas, gastos y honorarios de abogado en caso de presentar una reclamación contra Bacardí". Íd. Por su parte, el patrono "se comprometió a pagar $27,229 al señor Torres Arroyo". Íd.

En cuanto al acuerdo pactado, en ese caso opinamos que "[e]s común que patronos y empleados **transijan** posibles reclamaciones relacionadas al despido con el fin de ahorrar tiempo, dinero y esfuerzo". (Énfasis suplido). Íd., pág. 5. Igualmente, descartamos la sentencia del Tribunal de Apelaciones por ser errónea en derecho, y porque **"arremetería contra el interés público en promover la transacción de las controversias"**. (Énfasis suplido). Íd.[14]

---

[14] Debemos mencionar que, como resultado de un aumento en los contratos de transacción se intentó legislarlos sin éxito. El proyecto correspondiente tenía como "propósito el declarar nula toda transacción extrajudicial entre empleado y patrono, al momento de finalizar su relación como tal [que impusiera] al trabajador condiciones restrictivas". P. de la C. 417 de 30 de marzo de 1993, 1ra Sesión Ordinaria, 12ma Asamblea Legislativa. El referido proyecto de ley consideró compeler la participación del Secretario del Departamento del Trabajo, similar a la intervención provista por la Ley Núm. 379 de 15 de mayo de 1948, según enmendada, conocida como la *Ley para establecer la jornada de trabajo en Puerto Rico* (Ley Núm. 379), 29 LPRA sec. 271 *et seq.*, como una posible alternativa. Sin embargo, el Hon. César Almodóvar Marchany, Secretario del Departamento del Trabajo y Recursos Humanos, reseñó lo siguiente respecto a la labor de los abogados del Departamento con relación a estos contratos de transacción, las estipulaciones que contravienen los derechos de los trabajadores y las motivaciones de éstos para firmarlos a pesar de las condiciones restrictivas:

> Los abogados del Departamento del Trabajo examinan anualmente un gran número de estas estipulaciones en calidad de asesores a los trabajadores envueltos. Lamentablemente, en la mayoría de los casos, a pesar de advertir a éstos las consecuencias negativas de algunas cláusulas y de que expresamente se les explican los reparos que pudieran anteponerse a ellas, los

## C. Ley Núm. 402

En nuestro ordenamiento, el legislador puede imponer o limitar de forma expresa los honorarios de abogado para promover la política pública. *In re* Otero, Pacheco, 200 DPR 561, 576 (2018). S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria,* San Juan, Ed. Situm, 2016, sec. 3.18, pág. 194.

En cuanto a la política pública, tras realizar un análisis del Historial Legislativo, debemos resaltar que la Ley Núm. 402 prohíbe los contratos en los que los obreros pacten un *Acuerdo final* y se obliguen al pago de honorarios de abogado. Durante las discusiones del proyecto que culminó en la aprobación del estatuto, se aclaró lo siguiente en torno a este tema:

> [E]ste proyecto de ley, partiendo de la base de que toda **reclamación** por parte de un obrero es justa y razonable y de que es la mejor política pública que el obrero obtenga **la totalidad** de su reclamación, prohíbe y declara nulos los contratos entre abogado y obrero a virtud del cual el obrero vendría obligado a pagarle honorarios de abogado por tramitarle el pleito. Bajo la filosofía de que en una situación tal **lo razonable y lo justo es que el patrono demandado pague todos los honorarios del obrero cuando este obtiene sentencia a su favor,** el proyecto declara nulos los contratos entre abogado y obrero para la

---

trabajadores firman. De conformidad con lo expresado por los trabajadores que acuden a nuestras oficinas, firman porque necesitan el dinero urgentemente y porque el trámite judicial de las reclamaciones se demora mucho tiempo. Como podemos apreciar, el Departamento del Trabajo y Recursos Humanos se encuentra atado de manos al sólo poder asesorar y no poder recomendar que los trabajadores no firmen ni acepten estas condiciones onerosas para sus derechos adquiridos como tales. P. de la C. 417, *supra*, Informe Comisión de lo Jurídico Civil del Senado, págs. 7-8.

Finalmente, el aludido proyecto fue vetado por el Gobernador.

reclamación de salarios y **ordena a los Tribunales conceder los honorarios a favor del abogado del obrero en todos estos casos de reclamación de salarios.**

**<u>De manera que, por un lado declara nulos los contratos entre el obrero y el abogado y por otro lado impone la obligación de condenar al patrono al pago de los honorarios del abogado del obrero</u>.**

**El proyecto tiene el alcance de prohibir el que se paguen por los obreros honorarios a sus abogados, o a los abogados que puedan intervenir en contiendas o luchas entre el Capital y el Trabajo por discusiones en relación con el trabajo, incluyendo salarios.** Prohíbe el contrato, toda vez que hemos tenido la experiencia reciente de que entró a la mesa de discusiones entre el Capital y el Trabajo un factor que imposibilitó que una desavenencia entre los obreros y los patronos pudiera resolverse a tiempo y que se prolongara un estado de huelga en una empresa del Gobierno, en cuyo caso había abogados que tenían una participación de un tanto por ciento de beneficios de lo que obtuviesen los obreros con motivo de esa discusión de salarios. Los abogados detuvieron la solución del conflicto y perjudicaron los intereses de los obreros prolongando innecesariamente la huelga. D[e] manera que este proyecto contiene el propósito saludable de que en la mesa de contratación no intervendrá el factor 'honorarios de abogado' en forma alguna, y que solamente se discutirá lo que corresponde a los trabajadores. Esa parte del proyecto es muy importante y saludable para los obreros y la Comisión Jurídica Civil informó favorablemente parte del proyecto.

La otra parte se refiere a la reclamación de salarios por parte de los trabajadores y el proyecto encarna el principio de que el obrero reciba su jornal sin que pague honorarios de abogado, y que debe obligarse al patrono a que pague los honorarios. (Énfasis y subrayado suplido). P. de la C. 205 de 16 de febrero de 1950, 2da Sesión Legislatura Ordinaria, 17ma Asamblea Legislativa, pág. 882.

Posteriormente, los Artículos 1, 2 y 3 de la Ley Núm. 402, *supra*, fueron enmendados por la Ley Núm. 90 de 3 de junio de 1980. Así, el Legislador consignó en la correspondiente Exposición de Motivos que:

> **[S]e promulga la presente ley a los fines de dejar claramente establecido que lo dispuesto en la referida Ley Núm. 402 es aplicable a <u>cualquier tipo de reclamación</u> que tuviere un trabajador o empleado contra su patrono al amparo de la legislación laboral local** o federal, o bajo un convenio de trabajo de naturaleza individual o colectivo. (Negritas y subrayado suplido). Exposición de Motivos, Ley Núm. 90 de 3 de junio de 1980 (1980 Leyes de Puerto Rico 246).

Específicamente, el Artículo 1 de la Ley Núm. 402, 32 LPRA sec. 3114, establece la política pública que promueve la legislación. A esos efectos, dispone:

> **Por la presente <u>la Asamblea Legislativa de Puerto Rico declara que permitir el cobro de honorarios de abogado a los trabajadores o empleados que se ven en la necesidad de reclamar contra sus patronos, al amparo de la legislación laboral</u> federal o <u>local</u> o convenio de trabajo de naturaleza individual o colectivo, <u>equivale a permitir que se reduzca el valor de su trabajo en la cantidad que paguen a sus abogados</u> […].**
>
> **Se declara, por lo tanto, que <u>la política del Gobierno de Puerto Rico es proteger a los trabajadores y empleados contra tales reducciones en el valor de su trabajo</u> […].** (Negritas y subrayado suplido). <u>Íd.</u>

Conforme a lo anterior, la Ley Núm. 402 prohíbe cualquier contrato o acuerdo en que un empleado se obligue directa o **indirectamente** a pagar honorarios en casos de **reclamaciones laborales** judiciales o **extrajudiciales** en contra de su patrono. D. Fernández Quiñones, *Derecho Laboral*, 67 Rev. Jur. UPR 749, 761 (1998). Así, un abogado que inste una reclamación laboral en contra del patrono de un **empleado o trabajador** está impedido de cobrar los honorarios a este último, ya que "equivale a permitir que se reduzca el valor del trabajo del obrero en la cantidad que pague a su

representante legal". <u>COPR v. SPU</u>, 181 DPR 299, 349 (2011);

<u>Belk v. Martínez</u>, 163 DPR 196, 203 esc. 5 (2004). Véanse,

también: <u>Hernández Maldonado v. Taco Maker</u>, 181 DPR 281, 295

(2011); *In re* Otero, Pacheco, *supra*, pág. 577; G. Figueroa

Prieto, *Conducta Profesional*, 77 Rev. Jur. UPR 833, 855-856

(2008).

Consiguientemente, el Artículo 2 de la Ley Núm. 402, 32

LPRA sec. 3115, provee un remedio en casos de una reclamación

extrajudicial, cuando las partes no puedan acordar los

honorarios que debe pagar el patrono al abogado del

trabajador o empleado. <u>Íd.</u> Específicamente, señala que:

> En todo caso radicado ante los tribunales de Puerto Rico por un trabajador o empleado en que se reclame cualquier derecho o suma de dinero contra su patrono, al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo y en que se conceda la reclamación en todo o en parte, se condenará al patrono al pago de honorarios de abogado, si éste no fuere uno de los abogados del Departamento del Trabajo y Recursos Humanos. Cuando se dicte sentencia a favor del patrono querellado no se condenará al trabajador o empleado querellante al pago de honorarios de abogado; Disponiéndose, que para los efectos de las secs. 3114 a 3117 de este título la palabra 'patrono' incluirá a las autoridades y corporaciones públicas del Gobierno Estadual y/o sus representantes.
>
> **En los casos en que la reclamación sea satisfecha <u>extrajudicialmente</u>, las partes, además de cumplir con las disposiciones de ley sobre transacciones, deberán, <u>si no se pusieren de acuerdo sobre los honorarios a ser pagados por el patrono querellado al abogado del trabajador o empleado querellante</u>, someter su determinación al tribunal que hubiera tenido jurisdicción sobre el**

**caso.** Las costas de estos procedimientos serán de oficio. (Negritas y subrayado nuestro). Íd.[15]

Por su parte, el Artículo 3 de la Ley Núm. 402, 32 LPRA sec. 3116, establece que:

> **Serán nulos y contrarios al orden público todos los contratos, convenios o acuerdos en que trabajadores o empleados se obliguen directa o <u>indirectamente</u> a pagar honorarios a sus abogados en casos de reclamaciones judiciales o <u>extrajudiciales</u> contra sus patronos bajo la legislación laboral de Puerto Rico** o bajo la legislación laboral del Congreso de Estados Unidos aplicable a Puerto Rico, o al amparo de un convenio de naturaleza individual o colectivo […]. (Negritas y subrayado nuestro). Íd.

Claramente, el referido artículo prohíbe **todo** contrato mediante el cual los trabajadores o empleados ya sea directa o **indirectamente** se comprometan a pagar los honorarios de su representación legal devengados en el trámite de una **reclamación** judicial o **extrajudicial** presentada en contra de su patrono. (Ènfasis nuestro). <u>López Vicil v. ITT Intermedia, Inc.</u>, 142 DPR 857, 868-869 (1997) (*Per Curiam*).

Ahora bien, el Artículo 2 de la Ley Núm. 402, *supra*, señala que cuando "el obrero prevalezca en un caso mediante sentencia emitida luego del juicio, […] el tribunal deberá condenar al patrono al pago de honorarios de abogado". Así, para que proceda la imposición de honorarios de abogado al

---

[15] En lo pertinente, el 26 de diciembre de 2002, la Oficina de la Procuradora del Trabajo del Departamento del Trabajo y Recursos Humanos en respuesta a la *Consulta Núm. 15054* interpretó el Artículo 2 de la Ley Núm. 402, *supra*, en el contexto de una transacción extrajudicial lograda tras la presentación de la demanda en el foro primario. Concluyó que la solución a una controversia sobre honorarios durante un acuerdo de transacción extrajudicial debe ser atendida por el Tribunal de Primera Instancia. Véase Consulta del Procurador del Trabajo Núm. 15054 de 26 de diciembre de 2002.

patrono deben concurrir las siguientes condiciones: "1) que un empleado haga una reclamación a su empleador, 2) que la reclamación surja al amparo de la legislación laboral, 3) que el empleador sea un "patrono" bajo la Ley Núm. 402, y 4) que se conceda la reclamación". Ortiz y otros v. Mun. de Lajas, 153 DPR 744, 751 (2001). Véase, también, COPR v. SPU, *supra*, pág. 339 esc. 33.[16]

Para hacer efectivos los anteriores preceptos estatutarios, el Artículo 4 de la Ley Núm. 402, 32 LPRA sec. 3117, establece que todo abogado que reciba compensación de un empleado o grupo de obreros "en violación a las disposiciones de las secs. 3114 a 3117 de este título" tendrá que reembolsar al empleado o grupo de obreros la cantidad que le haya sido pagada, más una suma igual de dinero en concepto de daños. Íd. Finalmente, el estatuto prescribe que "[e]l Secretario del Trabajo y Recursos Humanos queda autorizado para comparecer, en representación de los obreros, en las acciones para hacer efectivas dichas sumas", contrarias a la Ley Núm. 402. Íd.

---

[16] El profesor Steidel Figueroa puntualiza que "[l]a ley no impone al obrero que no prevalece la obligación de pagar los honorarios de los abogados del patrono". S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria,* San Juan, Ed. Situm, 2016, sec. 3.18, pág. 209. Además, explica que el referido Artículo 2 de la Ley Núm. 402, *supra*, presenta otra posibilidad cuando "el abogado [del obrero] resuelva extrajudicialmente su reclamación contra el patrono". Íd.

### D. Honorarios de abogado

En ocasiones anteriores hemos indicado que "[l]a Ley Núm. 402, *supra*, omite [definir los honorarios razonables y] establecer criterio alguno que guíe a los tribunales en su encomienda de fijar los honorarios de abogado que deberá pagar el patrono [al abogado del empleado]". COPR v. SPU, *supra*, pág. 340; Fernández Quiñones, *op. cit.*, *supra*. Ante este escenario, para poder subsanar el vacío legislativo, interpretamos la Ley Núm. 402 en conjunto con otras leyes laborales que se refieren al mismo asunto tales como la Ley Núm. 100 de 23 de junio de 1955, según enmendada, 29 LPRA sec. 146 *et seq.*, y la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.*, que fijan un tope para los honorarios de abogado a base de un por ciento de la indemnización otorgada al empleado.[17] De esa manera, por analogía, superamos el silencio del estatuto.[18]

Como norma general, el contrato de servicios profesionales de abogado se considera una variante del contrato de arrendamiento de servicios de acuerdo con el

---

[17]  Según el Artículo 11 de la Ley Núm. 80, 29 LPRA sec. 185k, el tribunal fijará una cantidad que no será inferior al quince por ciento (15%) del total de la compensación recibida por el trabajador o cien dólares ($100), lo que resulte mayor. COPR v. SPU, 181 DPR 299, 349 (2011).

En los casos al amparo de la citada Ley Núm. 100, se concederá una suma equivalente al veinticinco por ciento (25%) de la indemnización base concedida al empleado que prevalece en su demanda. Art. 4 de la Ley Núm. 100, 29 LPRA sec. 149. La diferencia se debe a que "los casos por discrimen tienden a ser más complicados y costosos que los casos al amparo de la Ley Núm. 80". López Vicil v. ITT Intermedia, Inc., 143 DPR 574, 582 (1991).

[18]  Véase Art. 18 del Código Civil de Puerto Rico, 31 LPRA sec. 18.

Artículo 1434 del Código Civil de Puerto Rico, 31 LPRA sec. 4013. No obstante, por estar revestido de un alto contenido ético, el contrato de servicios profesionales de abogado es de naturaleza *sui géneris*, que lo distingue de los contratos típicos de arrendamiento de servicios. <u>Nassar Rizek v. Hernández</u>, 123 DPR 360, 369-370 (1989). De esa manera, presenta una "relación contractual en abono de un interés público superior que puede trascender el interés exclusivo de las partes". <u>Íd.</u>, pág. 370.

Desde el inicio, la gestión profesional queda establecida conforme a las normas generales que rigen la fijación de honorarios de abogado según el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX. Así, hemos resuelto que "es deseable que el acuerdo o pacto sobre honorarios a ser cobrados sea reducido a escrito, con la mayor claridad en sus términos y libre de ambigüedades". <u>Pérez v. Col. Cirujanos Dentistas de P.R.</u>, 131 DPR 545, 553-554 (1992); <u>Colón v. All Amer. Life & Cas. Co.</u>, 110 DPR 772, 773 (1981).

Ante la ausencia de un pacto expreso sobre la cuantía a cobrar por servicios profesionales, el abogado tiene derecho a recibir una **compensación razonable** por los servicios que rinde a sus clientes. Art. 1473 del Código Civil de Puerto Rico, 31 LPRA sec. 4111.[19] Véanse, también: *In re*

---

[19] Específicamente, el Artículo 1473 del Código Civil de Puerto Rico, 31 LPRA sec. 4111, en lo pertinente, provee que "cuando no hubiere convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte, ante cualquier

Franco Rivera, 169 DPR 237, 267 (2006); Méndez v. Morales,
142 DPR 26, 35 (1996).

En relación con este asunto, denominamos este principio
como *quantum meruit*, que significa "[t]anto como se merece".
I. Rivera García, *op. cit.*, pág. 395; Blanco Matos v. Colón
Mulero, 200 DPR 398, 412 (2018); *In re* Franco Rivera, *supra*,
págs. 266-267; Pérez v. Col. Cirujanos Dentistas de P.R.,
*supra*, pág. 557.

En el pasado hemos aplicado la norma de *quantum meruit*
para fijar el monto de los honorarios de abogado en distintos
escenarios tales como: (1) el abogado que pactó un contrato
de honorarios con su cliente el cual se invalidó por alguna
irregularidad en su ejecución; (2) el abogado que fue
destituido por su cliente sin culminar el trabajo para el
que fue contratado; (3) el abogado que pactó honorarios
contingentes, se vio obligado a desistir voluntariamente de
la reclamación por instrucción de su cliente y no contempló
esa eventualidad en el contrato de servicios legales; y (4)
el abogado que renunció a la representación legal de su
cliente, antes de culminar la gestión profesional para la
que fue contratado por honorarios contingentes. Véanse:
Blanco Matos v. Colón Mulero, *supra*, pág. 416; Pérez v. Col.
Cirujanos Dentistas de P.R., *supra*, pág. 561; Colón v. All
Amer. Life & Cas. Co., 110 DPR 772, 773 (1981).

---

corte de jurisdicción competente, el importe razonable de dichos
servicios". Íd.

## V. Discusión

El señor Ortiz fue empleado de Mead hasta el 10 de diciembre de 2012, fecha en que fue cesanteado y, se le proveyó el *Borrador del acuerdo* mediante el cual se le informó sobre su elegibilidad a beneficios condicionados a la renuncia de posibles reclamaciones al amparo de leyes laborales estatales y federales en contra del patrono. En ese momento, surgió una relación jurídica incierta entre las partes. La entrega del *Borrador del acuerdo* fue un intento legítimo de conciliar las pretensiones en tensión de cada una de las partes y con ello, procurar eliminar la incertidumbre entre éstas. Posteriormente, el señor Ortiz contrató los servicios legales de las peticionarias. Desde su intervención inicial como representantes legales del empleado, las peticionarias le exigieron al patrono modificaciones sobre los términos del *Borrador del acuerdo* a favor del señor Ortiz. Con ello, se concretizó una reclamación extrajudicial frente a Mead a nombre del empleado.

Las negociaciones entre el patrono y las peticionarias, en representación del empleado, se llevaron a cabo durante tres (3) meses aproximadamente. Sin embargo, Mead condicionó el perfeccionamiento del *Acuerdo final* a que el empleado suscribiera una cláusula de relevo del pago de honorarios de abogado. La imposición de esta cláusula y la denegatoria del patrono a estipular el pago de honorarios de abogado provocó una desavenencia entre Mead y las

peticionarias quienes, ante las exigencias del patrono y la apariencia de un posible conflicto ético, se vieron forzadas a renunciar a sus honorarios para colocar los intereses de su cliente sobre los propios. Consecuentemente, el *Acuerdo final* se firmó el 7 de marzo de 2013 y la renuncia de las peticionarias sobre los honorarios se concretó a través de una misiva el 11 de marzo de 2013.

La disputa sobre los honorarios durante el curso de las negociaciones, que a su vez, provocó un potencial conflicto de interés entre las peticionarias y el empleado es uno de los escenarios que viene a atender la Ley Núm. 402. Precisamente, la política pública que promueve el estatuto es clara al establecer que será nulo y contrario al orden público todo contrato o acuerdo en el que un empleado se obligue al pago directo o indirecto de honorarios de abogado, pues ello, claramente, atenta contra el principio que protege el que no se vea reducido el valor del trabajo del empleado ante una reclamación presentada en contra de su patrono. Véase Exposición de Motivos, Ley Núm. 90 de 3 de junio de 1980 (1980 Leyes de Puerto Rico 246); Art. 3 de la Ley Núm. 402, *supra*.

En el presente caso, la cláusula de renuncia de honorarios de abogado incluida en el *Acuerdo final* entre el patrono y el señor Ortiz tuvo el efecto de imponerle al empleado de manera indirecta la obligación de costear los honorarios de abogado -reduciendo, a su vez, el valor de su trabajo-, para poder informarse adecuadamente sobre sus

derechos y negociar mejores condiciones ante su cesantía. Ello, colocó al empleado en desventaja frente a Mead, quien en todo momento contó con representación legal desde la redacción del *Borrador del acuerdo* y durante el curso de las negociaciones. Ese no fue el caso del empleado, quien, ante la negativa del patrono a estipular el pago de honorarios, tendría que costear su propia representación legal.

Más aún, la referida cláusula de relevo junto con la denegatoria del patrono a estipular el pago de honorarios de abogado, obligó a las abogadas aquí peticionarias a enfrentar cuestionamientos éticos que las llevaron a renunciar a sus honorarios de abogado. Lo anterior, dado a que se encontraron en la disyuntiva de tener que escoger entre favorecer los intereses de su cliente a obtener el acuerdo más beneficioso y expedito posible *versus* preferir su conveniencia económica al colocarse sus honorarios sobre la mesa de negociación como pieza clave para la culminación de la disputa.

Ante ese dilema, tal y como hicieron las peticionarias, el profesional del derecho siempre deberá optar por el cumplimiento con los principios éticos, favorecer los intereses de su cliente y renunciar a los honorarios de abogado, para así evitar, incluso, la mera apariencia de un conflicto de interés.

Resolver esta controversia de otra forma tendría el efecto de privar a los empleados cesanteados que confronten este tipo de acuerdo de una representación legal adecuada

que vele por sus intereses. Por eso, no podemos avalar las pretensiones del patrono en este caso, pues, en lugar de fomentar un "libre debate" entre las partes, informado e inteligente, silenciaríamos al empleado, quien es la parte más vulnerable en el proceso.

Por las razones antes expresadas, decretamos que la inclusión de la cláusula de relevo del pago de honorarios de abogado en el *Acuerdo final* es **nula** por ser contraria a la Ley Núm. 402. Igualmente, entendemos que la renuncia **forzada** de las peticionarias a los honorarios de abogado por consideraciones puramente éticas fue ineficaz, ya que resulta contraria a los principios que encarna la Ley Núm. 402 y no puede avalarse en este caso.

A tono con lo anterior, ante un escenario similar al presente, la mejor práctica será que las partes estipulen entre ellas junto al *Acuerdo final* los honorarios de abogado correspondientes que deberán ser sufragados por el patrono.

Ahora bien, si, como ocurrió aquí, las partes no logran ponerse de acuerdo y ocurre una desavenencia con respecto a los honorarios a ser pagados por el patrono a los abogados del empleado, se activará el mecanismo provisto por el Artículo 2 de la Ley Núm. 402, *supra*. Éste le permite a las partes que no lograron estipular los referidos honorarios en una transacción extrajudicial relacionada a reclamaciones laborales, someter la controversia "al tribunal que hubiera tenido jurisdicción". 32 LPRA sec. 3115. En otras palabras, el remedio ante un conflicto sobre honorarios de abogado en

el proceso de transacción de una reclamación extrajudicial es recurrir al Tribunal de Primera Instancia correspondiente, sobre quien recaerá la tarea de fijar los honorarios de abogado que deberá pagar el patrono. Véase Art. 2 de la Ley Núm. 402, *supra*.

No obstante, como vimos, la Ley Núm. 402 omite definir los honorarios razonables y tampoco establece criterio alguno que guíe a los tribunales en su encomienda de fijarlos. En el caso ante nos, la declaración de nulidad de la cláusula del relevo de honorarios de abogado al igual que la renuncia forzada de los honorarios de abogado provocada por un conflicto ético, ante la ausencia de un pacto de honorarios, configuró la justa causa necesaria que permite a las abogadas aquí peticionarias ser compensadas por los servicios rendidos a base de la doctrina de *quantum meruit*.

El Tribunal de Primera Instancia deberá, por lo tanto, evaluar la prueba que presenten las peticionarias sobre las gestiones profesionales realizadas a favor del señor Ortiz, tomando en consideración los factores enumerados en el Canon 24, *supra*, con especial énfasis en examinar los beneficios que haya derivado el empleado como resultado de los servicios provistos por ellas.

**VI.**

La discusión anterior nos lleva a concluir que el Tribunal de Apelaciones erró al aplicar la doctrina de la ley del caso y ordenar la desestimación de la demanda de las peticionarias, tras determinar que no procedía la aplicación de la Ley Núm. 402 al presente caso. A base de lo anterior, se revoca la Sentencia del Tribunal de Apelaciones de 12 de abril de 2018 y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos acorde con lo dispuesto en esta Opinión.

Se dictará Sentencia de conformidad.


                                    ROBERTO FELIBERTI CINTRÓN
                                           Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Judith Berkan y otros<br><br>Peticionarios<br><br>v.<br><br>Mead Johnson Nutrition Puerto Rico, Inc.<br><br>Recurrida | AC-2018-62 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 12 de marzo de 2020.

Por los fundamentos esbozados en la *Opinión* que antecede, la cual se hace formar parte íntegra de la presente *Sentencia*, revocamos la *Sentencia* emitida por el Tribunal de Apelaciones el 12 de abril de 2018 y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos acorde con lo dispuesto en la *Opinión*.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo